Kenneth **RAKESTRAW**, Plaintiff,

v.

**CARPENTER COMPANY**, Defendant.

No. 1:94CV53–S–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

Sept. 29, 1995.

Jim Waide, Waide Law Office, Tupelo, MS, for Plaintiff.

Thomas A. Wicker, Holland, Ray & Upchurch, Tupelo, MS, for Defendant.

## OPINION

SENTER, Chief Judge.

This cause is presently before the court upon defendant's motion for summary judgment. Plaintiff has charged that defendant discriminated against him in violation of the Americans with Disabilities Act (ADA) when it terminated his employment.

### FACTS

Kenneth Rakestraw was employed as a truck driver for Carpenter Company for six years. Carpenter manufactures urethane foam to be used in the furniture industry. In mid-December, 1992, Rakestraw was unloading polyfoam buns from his truck by sliding them to the back of the trailer. Each set of buns weighed approximately 300 to 400 pounds. While attempting to lift one set of buns over a wheel hump in the trailer, plaintiff overexerted himself and injured his back. He thought the injury was a mere strain or pulled muscle, but hot baths and aspirin provided no relief. Rakestraw took a few days off upon his doctor's orders, and then returned to work.

Rakestraw's pain continued into the new year, and he again sought medical treatment. Over the next several months, he frequented the Med–Serve clinic in Tupelo, Mississippi, and was seen at various times by a neurologist, a neurosurgeon, and several general practitioners. Rakestraw had two MRI procedures performed prior to his job termination, both of which were determined to be negative with regard to any injury. During this prolonged period of care, Rakestraw continued to work when it was allowed by his doctor. He could perform all duties required of his position, except the unloading of the polyfoam buns. Carpenter accommodated Rakestraw's injury until August, 1993, by selectively dispatching him to businesses that did not order buns.

In mid-August, Rakestraw took approximately two weeks off to rest his back. Upon returning to work, he was required to present a release from his doctor regarding his reason for missing work, as well as his ability to work in the future. Rakestraw's release was accepted, and he was immediately assigned to a position that required him to unload two full loads of buns. Rakestraw made the required delivery, but realized that his injury prevented him from completing the task by himself. He returned to the plant and informed Carpenter's personnel manager, George Null, that the doctor had prohibited him from doing any heavy lifting. Null responded that the doctor's release did not prohibit Rakestraw from resuming all of his truck driving responsibilities. Rakestraw explained that he disagreed with Null's interpretation of the note, to which Null replied, "When do you think you'll be able to do one-hundred percent of your job?" Rakestraw stated that he would need two months of limited duties to allow his back time to heal. Null granted him thirty days, and said that if he could not fulfill all of his job responsibilities after that time, then Rakestraw would be required to take an unpaid leave of absence or possibly temporary disability leave.

Rakestraw returned to work, and a few weeks later was again making a delivery. In the middle of the trip, he realized he was a

few hours early, so he pulled over on the side of the road to rest, set his alarm clock, and fell asleep. He awoke to the realization that he had overslept, and resultingly returned to Carpenter six and one-half hours late. Rakestraw's employment was terminated following this incident, for the stated reason that this was the second time he had been late as a result of sleeping in his truck. Rakestraw alleges that this rationale was a mere pretext, because his restricted abilities inconvenienced Null by requiring adjustments in driver assignments.

Following his termination, Rakestraw's back pain forced him to again seek medical treatment. The doctors conducted a third MRI, during which they discovered a "trapped nerve." This diagnosis resulted in back surgery which afforded Rakestraw a complete recovery and total relief from his pain, approximately one year and ten months after the date of injury.

## DISCUSSION

### I.

■■■ The summary judgment standard is familiar and well settled. Summary judgment is appropriate only if the record reveals that there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c). The pleadings, depositions, admissions, answers to interrogatories, together with any affidavits, must demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Federal Sav. and Loan Ins. v. Kralj,* 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the nonmov-

ing party. *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). However, summary judgment is mandated after adequate discovery and upon proper motion against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### II.

■■■ The Americans with Disabilities Act prohibits discrimination against qualified, disabled employees on the basis of that individual's disability. 42 U.S.C. § 12112(a). To state a prima facia case under the ADA, Rakestraw must prove that (1) he suffers from a "disability"; (2) he is a "qualified individual"; and (3) he suffered an adverse employment action because of his disability. *Stradley v. Lafourche Communications,* 869 F.Supp. 442, 443 (E.D.La.1994); *see Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993). On summary judgment, Rakestraw need only show that there is a genuine issue of material fact on each of these elements. *Chiari v. City of League City,* 920 F.2d 311, 314–15 (5th Cir.1991).[1]

■■■ The ADA defines the term disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the plaintiff]; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In order to avail himself of the ADA's protections, Rakestraw must satisfy the Act's threshold requirement by demonstrating that his back injury constitutes a disability. *See de la Torres v. Bolger,* 781 F.2d 1134, 1136–37 (5th Cir.1986). It is important to note that a termination based solely on an employee's injury does not necessarily give rise to a cause of action under the ADA. The impairment must be considered a disability or handicap to constitute

1. In seeking guidance for its decision, this court, as have many others, turns to cases decided under the Rehabilitation Act. *See Farley v. Gibson Container, Inc.,* 891 F.Supp. 322, 325 n. 1 (N.D.Miss.1995). This is consistent with Congress' intent "that the relevant caselaw developed under the Rehabilitation Act be generally applicable to the term 'disability' as used in the ADA." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727 n. 14 (5th Cir.1995) (*quoting* 29 C.F.R. § 1630, App., § 1630.2(g)).

illegal discrimination. Temporary injuries with no permanent effects are typically not considered disabilities under the ADA. *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 257 (N.D.Miss.1995); *see Evans v. Dallas*, 861 F.2d 846, 852–53 (5th Cir.1988) (holding that the Rehabilitation Act required an impairment of a continuing nature). Several courts have held specifically that back injuries of limited duration do not constitute a handicap. *See Jones v. Alabama Power Company*, 1995 WL 238338 (N.D.Ala.); *Paegle v. Department of Interior*, 813 F.Supp. 61, 62 (D.D.C. 1993); *Visarraga v. Garrett*, 1993 WL 209997 (N.D.Cal.). The evidence in this case demonstrates that surgery has corrected Rakestraw's back injury, and the impairment no longer exists. Thus, a finding that the injury constitutes a disability would be contrary to the weight of relevant precedent.

■ However, the fact that Rakestraw's injury is not generally held to be a disability does not, in and of itself, free the defendant from potential liability. A determination as to whether a person is disabled is to be made on a case by case basis. *Fuqua v. Unisys Corp.*, 716 F.Supp. 1201, 1205 (D.Minn.1989); *Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328, 1342 (S.D.Tex.1987), *aff'd* 863 F.2d 881 (5th Cir.1988). As stated in *Fuqua*, "[t]he inquiry is individualized—does a particular impairment for a particular person constitute a significant barrier to employment?" 716 F.Supp. at 1205 (citing *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986)).

■ Guidance in answering this question is provided by the Act itself. An injury must substantially limit a major life activity to qualify for protection under the ADA. As explained within guidelines promulgated by the EEOC, three factors should be considered in determining whether such a limitation exists. This analysis can then be used to determine whether a particular injury constitutes a significant barrier to employment and thereby satisfies the definitional requirements for a "disability." The three factors are:

(i) the nature and severity of the impairment;

(ii) the duration or expected duration of the impairment; and

(iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

■ In considering the first element, it is evident from the record that Rakestraw's injury was painful and required frequent medical attention. However, the final two factors specifically consider the injury's duration and permanent impact. The law therefore again requires the court to bestow significant relevance to the temporal nature of Rakestraw's injury. The Act explicitly requires that the impairment *substantially* limit a major life activity. Thus, regardless of whether the impairment limited Rakestraw's life activities, the court finds that the nature of the injury and its relatively short duration rendered such potential limitations insubstantial. Rakestraw's injury was not a significant barrier to employment because the injury was not long-lasting. Furthermore, the fact that Rakestraw's injury was not remedied until after he was terminated does not bring his cause of action within the scope of the ADA. There is no evidence that Rakestraw had a record of a disability or was perceived by his employer as having a disability. In fact, all evidence is to the contrary. The record points out that upon returning to work, Rakestraw told the personnel supervisor that if he was allowed a work accommodation for two months, his back would be healed and he could again fulfill one-hundred percent of his work responsibilities. Although the supervisor's demand that Rakestraw return to his job within 30 days may demonstrate a lack of sensitivity and compassion, this episode and numerous examples in the deposition testimony establish that neither Rakestraw nor the company thought the injury was a permanent disability. The evidence clearly demonstrates that all parties involved had the expectation that Rakestraw would soon recover.

In conclusion, although a precise delineation of the term "impairment" is not set forth within the ADA's provisions, the court does not believe that it encompasses transitory injuries such as that suffered by Rakestraw. The injury's non-permanent nature, and the

fact that it was perceived as such, prevent a finding that it rose to the required status of a disability. This rationale also prohibits a conclusion that Rakestraw was substantially limited in a major life activity, that a record of such an impairment existed, or that Rakestraw was regarded as having such an impairment. While the court is sympathetic to the fact that Mr. Rakestraw lost his job, this concern must be tempered with the legal reality that not every decision to terminate an employee gives rise to a federal cause of action. Rakestraw failed to establish the initial element of his prima facia case, and he is thereby not entitled to protection under the ADA. Thus, in accordance with the statute's plain language, its interpretive guidelines, and the decisions of numerous other courts, it is held that Carpenter is entitled to a judgment as a matter of law, and summary judgment is hereby granted.

An order in accordance with this opinion shall be issued.

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pursuant to an opinion filed contemporaneously herewith, it is ORDERED:

That the motion of defendant Carpenter Company for summary judgment is well taken and is hereby granted. This cause of action is dismissed with prejudice.

SO ORDERED.