Robert R. EVANS, Plaintiff–Appellant
Cross–Appellee,

v.

CITY OF DALLAS, Defendant–Appellee
Cross–Appellant.

No. 87–1740.

United States Court of Appeals,
Fifth Circuit.

Dec. 15, 1988.

Before REAVLEY, JOHNSON, and JONES, Circuit Judges.

PER CURIAM:

## I. *Facts and Procedural History*

Plaintiff Robert R. Evans brought this action against the defendant City of Dallas and three defendant employees of the City, asserting numerous federal and state law claims concerning the termination in 1984 of Evans' employment with the City. The district court granted defendants' summary judgment motion as to all of Evans' federal law claims except a claim for deprivation of property without due process. The district court dismissed even this remaining due process claim as to the individual defendants who were determined to have qualified immunity. The district court then dismissed Evans' pendent state law claims without prejudice.

Evans amended his complaint to assert a claim of deprivation of liberty without due process. The district court later granted the City's summary judgment motion as to the claim of deprivation of liberty without due process.

The sole claim remaining for trial was Evans' claim against the City for deprivation of property without due process. At trial, the district court granted the City's directed verdict motion as to this claim and entered a take-nothing judgment. Both Evans and the City have appealed.

## II. *Discussion*

### A.

Evans challenges the district court's directed verdict on the claim of deprivation of property without due process. The district court directed this verdict because, although it concluded that Evans had a property interest that had been deprived, it also concluded that the deprivation had been with due process. The City challenges the district court's conclusion that Evans had a property interest. We turn first to the question of whether Evans had

David S. Jones, Baldwin, Gilliland & Jones, Dallas, Tex., for Evans.

Sam Lindsay, Chandra V. Fripp, Asst. City Attys., Dallas, Tex., for City of Dallas.

a property interest in his continued employment.[1]

Property interests do not spring from the Constitution, but are instead created and defined by existing rules or understandings that stem from independent sources such as state law.[2] "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing."[3] This Court has noted that such an entitlement may be expressed in a contract, a statute, or through "the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent sufficient cause."[4] Once a property interest is found to exist, "federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."[5]

"The underlying conception of a 'property' interest is 'to protect those claims upon which people rely in their daily lives, reliance that must not be *arbitrarily* undermined.'"[6] Case law establishes that a state or local law requirement of *good* or *just* cause for termination precludes arbitrary termination and therefore creates a property right in continued employment free from arbitrary termination.[7] In the present case, the City's personnel rules provided that, when discharging probationary employees such as Evans, "valid reasons must exist for such discharge or reduction, and the employee must be advised of these reasons." Evans contends that the requirement of *valid* reasons, like a requirement of good or just cause, precludes arbitrary termination and therefore creates a property right. The City counters that case law also establishes that a probationary employee such as Evans "has no reasonable expectation of continued employment while in the probationary status" and therefore "no property interest in his or her continued employment sufficient to call forth procedural due process when that employment is terminated."[8]

As applied to the present case, the two lines of authority tug in different directions. In deciding whether Evans had a reasonable expectation of continued employment free from arbitrary termination, one might invest more significance in his probationary status (as reinforced by the doctrine of employment at will under Texas law[9]) and the trial-period purpose that probation typically serves. If so, one might argue that a probationary employee should have understood the requirement of valid reasons as serving a function different from protecting the employee from arbitrary termination—perhaps a procedural

---

1. Evans' claim of property deprivation without due process "depends on [his] having had a property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985).

2. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

3. *Perry v. Sindermann,* 408 U.S. 593, 602, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

4. *Henderson v. Sotelo,* 761 F.2d 1093, 1096 (5th Cir.1985) (quoting *Perry,* 408 U.S. at 602–03, 92 S.Ct. at 2700).

5. *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978).

6. *Shawgo v. Spradlin,* 701 F.2d 470, 475 (5th Cir.1983) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709 (emphasis in *Shawgo* original)).

7. *Schaper v. City of Huntsville,* 813 F.2d 709, 713–14 (5th Cir.1987); *Findeisen v. North East Independent School District,* 749 F.2d 234, 237 (5th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985); *Shawgo,* 701 F.2d at 476; *Daly v. Sprague,* 675 F.2d 716, 726–27 (5th Cir.1982), *cert. denied,* 460 U.S. 1047, 103 S.Ct. 1448, 75 L.Ed.2d 802 (1983).

8. *Burnley v. Thompson,* 524 F.2d 1233, 1240 (5th Cir.1975); *see also Stapp v. Avoyelles Parish School Bd.,* 545 F.2d 527, 532 (5th Cir.1977).

9. *See generally Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex.1985). Case law from this Circuit indicates that a property right to public employment does not arise if the employer does not abrogate its power under state law to discharge employees without cause. *See United States Steelworkers v. University of Alabama,* 599 F.2d 56 (5th Cir.1979).

function requiring that termination be accompanied by a certain degree of formality.[10] On the other hand, one might argue that the requirement of valid reasons speaks specifically to the matter at hand: whether termination was subject to a requirement of cause thereby precluding arbitrariness.

Evans points to *Bueno v. City of Donna*,[11] to support his argument that prior panel precedent resolves this conflict in his favor. This reliance, however, is misplaced. In *Bueno*, the defendant City of Donna argued that the plaintiff employees had no "property right in their employment sufficient to trigger due process protection."[12] The *Bueno* Court rejected this argument:

> The personnel policies in effect in the City of Donna during the relevant time period provided that "department heads may, for just cause, terminate the services of any employee under their supervision." The policies further provided that a probationary employee could be dismissed when "in the judgment of the department head or supervisor, his work record is not of a quality to merit continuation in the city's employment." Under this policy, *any* employee, including a probationary employee, was entitled to continued employment until there arose "just cause" for his dismissal. Consequently, it is clear that the plaintiffs who were fired possessed a constitutionally protected property interest in their continued employment and were entitled to minimum due process considerations be-

fore they could be deprived of that interest.[13]

The situation in *Bueno* may be distinguished from the case before us today. As the *Bueno* Court noted, the personnel policies in effect at the time of the discharge provided that *any* employee could be terminated for just cause. This language took precedence over the general rule that probationary employees have no property interest in continued employment.[14]

The Court in *Bueno* recognized that the existence of a property interest is not precluded by the mere use of the "probationary" label. Rather, the Court considered whether "rules and understandings" existed that gave rise to a proprietary right or interest in the plaintiff.[15] As we noted earlier, the law is well-settled that where state or local regulations indicate that an employee may be terminated only for cause, that employee has a property interest in his continued employment.[16] In *Bueno*, this rule of law supplemented and expanded the presumption against the existence of a property interest which accompanies the probationary status.

Evans, pointing to *Bueno*, suggests that the "valid reasons" language set out in the personnel policies is reflective of a contract mandating that he not be terminated except for just cause. We cannot agree. Taking the relevant language of the personnel manual as a whole, we determine that the requirement of valid reasons merely establishes a procedure through which termination must be accomplished.[17]

---

**10.** The establishment of procedure to be used in terminating employees does not necessarily create a property right. Instead, the "valid reasons" requirement may simply assure that termination is not based on illegal grounds. By requiring a procedure, the state does not automatically create a substantive right. *See, e.g., Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Loudermill*, 470 U.S. at 541, 105 S.Ct. at 1493.

**11.** 714 F.2d 484 (5th Cir.1983).

**12.** 714 F.2d at 491.

**13.** 714 F.2d at 492 (citations and footnote omitted; emphasis original).

**14.** *See Burnley*, 524 F.2d at 1240; *Stapp*, 545 F.2d at 532.

**15.** *Perry*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

**16.** *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1973).

**17.** *See, e.g., Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Our holding should not be construed as a determination that "valid reasons" can never be the equivalent of "just cause." Rather, in light of the facts in this case, the requirement that valid reasons be expressed is part and parcel of an administrative procedure accompanying the discharge of a probationary employee.

Although we agree that the language Evans relies on—"valid reasons must exist for such discharge or reduction, and the employee must be advised of these reasons"—could, taken at face value, be read as a guarantee of continued employment absent a good cause for termination, this language does not exist in a vacuum.

The personnel manual's section on the probationary period reads as follows:

1.49 Chapter XVI, Sec. 10 of the City Charter establishes the period of probation:

"Appointments or promotions of city officers and employees in the Classified and Unclassified Service shall not be deemed completed until a period of six (6) months shall have elapsed. A probationer *may be discharged or reduced at any time* within said period by the City Manager, or the Head of the Department in which said probationer is employed."

1.50 Nevertheless, valid reasons must exist for such discharge or reduction, and the employee must be advised of these reasons. The purpose of the probationary period is to determine that the employee can and will perform satisfactorily. It provides a period of training wherein the supervisor may help the employee succeed. [emphasis added]

Additionally, the Charter of the City of Dallas provides that this discharge during the probationary period is "without right of appeal." [18] Evans argues that the charter should not go into the calculus of considerations governing the question of whether he has a legitimate claim of entitlement. He observes that the personnel rules failed to quote the no-appeals provision, and argues that such provision is therefore not part of his mutually explicit understanding with the City.

We disagree. As this Court noted in *Henderson*, any personnel policy manual provision must "be construed in accordance with the Charter and may not grant a right inconsistent with the Charter." [19] Consequently, Evans' urgings that we ignore the charter provisions must go unheeded. However, even without the no-appeal provision set out in the charter, we must ultimately determine that no property interest in continued employment exists. The personnel manual succinctly states that probationary employees may be discharged "at any time." In light of this notation, the subsequent reference to valid reasons merely sets out the administrative procedures required to accompany such discharge. The existence of such procedures cannot be used as a bootstrap to aid the finding of an entitlement.[20] This interpretation is reinforced by the Charter's indication that no appeal may be taken from such a dismissal.[21]

Taken as a whole, the personnel manual's language indicates that a probationary employee may be terminated without cause at any time. At most, Evans had a unilateral expectation of continued employment. Such an expectation is insufficient to create a property interest.[22] Having determined that the district court erred in finding that Evans had a legitimate claim of entitlement in his continued employment, we need not address Evans' contention that the district court erred in its determination that the requirements of due process were satisfied.

---

18. Dallas City Charter, Chapter XVI, Sec. 10(a).

19. 761 F.2d at 1099.

20. *Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493 ("'[p]roperty' cannot be defined by the procedures provided for its deprivation. . . .").

21. Our language should not be construed as holding that the limited, or even nonexistent, procedure permissible under the charter's no-appeal provision to remedy violations of a property right shows that there was no intention to create any such right. *See Bueno,* 714 F.2d at 493; *Thurston v. Dekle,* 531 F.2d 1264, 1271 (5th Cir.1976). (The failure to provide a procedure for enforcement under state or local law may not be used to show that state or local law provides no right to enforce.)

22. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In fact, the City asserts that Evans was personally informed of the nature of the probationary period after he was rehired. This allegation calls into question whether Evans had even a unilateral expectation of continued employment.

## B.

Having determined that Evans had no property interest in his continued employment sufficient to trigger due process concerns, we turn now to the remainder of the grounds which Evans relies upon for appeal.

Evans challenges the district court's grant of summary judgment in favor of the City of Dallas on several unrelated claims. Summary judgment is proper when the pleadings and summary judgment evidence indicate that no genuine issue of material fact exists, and that as a matter of law the movant is entitled to judgment.[23] This standard authorizes the granting of a summary judgment against a party who, after adequate time for discovery, fails to establish an essential element of his case to which he will bear the burden of proof at trial.[24] The district court correctly applied this standard, and we hold that it committed no error in granting the City's motion for summary judgment as to each claim. We shall discuss each of Evans' contentions in turn.

Evans first argues that the district court erred in dismissing his liberty interest claim. Evans claims that the City placed false and stigmatizing material in his personnel file. Additionally, he asserts that the City maintains a policy of allowing other governmental agencies to inspect these files.

■ A party does not have a liberty interest in his reputation protected by the fourteenth amendment unless he can establish that the governmental employer's charges against him rise to such a level that they create a "badge of infamy" which destroys the claimant's ability to take advantage of other employment opportunities.[25] Additionally, the claims must be false[26] and the claimant must show that damage to his reputation and employment opportunities has in fact occurred.[27] Due process concerns are not triggered by the discharge, without more, of an employee for unsatisfactory performance.[28]

■ The criticism of Evans' work included in his progress reports does not encompass accusations of dishonesty or immorality.[29] Furthermore, Evans in no way supports his contention that the allegations contained in his personnel file are false, nor does he indicate that his ability to seek employment has been impaired.[30]

Although Evans asserted that his personnel file contains material so slanderous that he hesitated to present it to the district court initially,[31] this eleventh hour assertion does not preclude the granting of a summary judgment. Federal Rule of Civil Procedure 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

23. Fed.R.Civ.P. 56.

24. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

25. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707; *Wells v. Hico Independent School District,* 736 F.2d 243 (5th Cir.1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985).

26. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977).

27. *Myrick v. City of Dallas,* 810 F.2d 1382, 1385 (5th Cir.1987).

28. *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707.

29. The Probationary Performance Progress Reports indicate excessive absenteeism, poor attitude, public criticism of his department, bad language, and alienation of co-workers. The letter of dismissal indicates that Evans was dismissed due to unsatisfactory performance resulting in a failure of the probation.

30. In fact, Evans fails to provide evidence supporting his claim that the City has a policy of opening its records to other government agencies.

31. Evans offered to present this material to the district court *in camera,* after the time for his Response had passed.

The district court, concluding that Evans failed to provide support for either his allegations of falsity or harm to his reputation, did not err in granting summary judgment for the City on the liberty interest claim.

Evans also contends that he was fired in retaliation for statements he made about the Dallas Security Force which were published in the *Dallas Times Herald* in May of 1984.[32]

The district court observed that a plaintiff may recover for resulting harm if he was terminated in retaliation for exercising his first amendment rights on matters of public concern.[33] This may be true even when the plaintiff has no property interest in continued employment.[34]

■ As the Supreme Court noted in *Celotex*,[35] in the context of a motion for summary judgment, the movant is not required to present evidence negating the nonmovant's claim. Rather, the nonmovant must present evidence establishing the existence of a genuine issue of material fact as to each element upon which he will bear the burden of proof at trial. In a retaliatory discharge case, the plaintiff bears the burden of showing that his protected conduct was a motivating factor in the defendant's decision to terminate his employment.[36]

■ Evans here failed to produce any evidence other than the actual article. The City denied having any retaliatory motive in discharging Evans. This denial of retaliation is strongly supported by the fact that Evans was not employed by the City of Dallas when the statements were made and that the City rehired Evans two months after the statement was published. We determine that the district court did not err in dismissing Evans' first amendment claim.

■ In his third objection[37] to the grant of summary judgment in favor of the City, Evans alleges that the district court erred when it dismissed his claim brought under the Federal Rehabilitation Act of 1973.[38] Evans argues that he has a claim under the Act because one of the alleged reasons for his discharge was his excessive absenteeism resulting from a knee injury which required surgery.

The district court correctly concluded that Evans is not an individual with a handicap within the meaning of the Rehabilitation Act. The district court, noting the transitory nature of the injury, stated that

Although the injury may have limited Plaintiff's life activities during his recuperation, Plaintiff does not allege that it continues to do so; nor does he contend

---

32. The article contained the following paragraph:

Rex Evans, a former security force lieutenant, said the former officers' record in their new police jobs is proof they could have wielded full police authority responsibly. The training they received for the security force is equivalent to full police training in many departments, he said.

"It's not like we're not capable of doing the job. If they weren't qualified, these people (in suburban departments) that hired them wouldn't keep them," said Evans, who quit last month to take a job with the Duncanville police force at a cut in pay.

*Dallas Times Herald,* May 21, 1984.

33. *Connick v. Myers,* 461 U.S. 138, 146–49, 103 S.Ct. 1684, 1689–91, 75 L.Ed.2d 708 (1983); *Noyola v. Texas Department of Human Resources,* 846 F.2d 1021, 1023–24 (5th Cir.1988).

34. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

35. 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

36. *Jett v. Dallas Independent School Dist.,* 798 F.2d 748, 757 (5th Cir.1986).

37. Evans also complains of the district court's dismissal of the individual defendants pursuant to the doctrine of qualified immunity. Because we ultimately determine that Evans has not been denied a constitutionally protected right, we decline to reach this issue.

38. The Act provides that no "otherwise qualified individual with handicaps" as defined by § 706(8) may be discriminated against solely on the basis of that handicap by any program or activity which receives federal financial assistance. 29 U.S.C. § 794.

Section 706(8)(B) defines an individual with a handicap as one "who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

that others regard him as having an impairment that continues to do so. At first glance Plaintiff might be supposed to have a record of such impairment. However, subsections (i) and (iii), cast in the present tense, ... contemplate an impairment of a continuing nature.... See, *Southeastern Community College v. Davis*, 442 U.S. 397, 405–06, n. 6 [99 S.Ct. 2361, 2366–2367 n. 6, 60 L.Ed.2d 980] (1979).

We agree with the district court's determination that Evans' injury does not bring him within the scope of the Act.[39]

The district court did not err in granting summary judgment in favor of the City on these individual claims, and the order of the district court on these claims is affirmed.

## C.

■ In his final point of error, Evans asserts that the district court abused its discretion by refusing to assume jurisdiction over Evans' pendent state claims. Pendent jurisdiction represents a discretionary case-management doctrine; it does not follow the plaintiff into federal court as a matter of right.[40] In the instant case, the district court dismissed all of plaintiff's federal claims except for the due process claim. Under *Gibbs*, the district court did not abuse its discretion in failing to exercise jurisdiction over multiple state claims where only a single federal claim remained. The district court was merely exercising its jurisdictional prerogative, and acted well within its authority.

## III. *Conclusion*

We find no merit in any of Evans' points of error. Because we determine that Evans has no property interest in his continued employment sufficient to trigger due process concerns, we need not address the district court's finding that the require-

ments of procedural due process were satisfied. Furthermore, having correctly determined that Evans failed to meet his burden at the summary judgment phase of the proceedings, the district court properly dismissed those claims. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

**39.** Additionally, we note that the district court found nothing in the legislative history of the Act to indicate that Congress contemplated including an injury such as plaintiff's within the Act's scope. *See,* 1973 U.S.Code Cong. & Admin. News 2076–2154.

**40.** *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).